IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| VERONICA BUTLER, | ) | |
| Wife of ANTHONY BUTLER, Deceased, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:14-cv00094-JAR |
| | ) | |
| KEVIN J. CAVANAUGH, | ) | |
| PAM TRANSPORT, INC., | ) | |
| CODY N. McKEE, | ) | |
| WADE E. McCLURE, | ) | |
| USA TRUCK, INC., | ) | |
| TROY A. COFFELT, | ) | |
| FUREX, INC., | ) | |
| and | ) | |
| IVAN M. CHEPYNETS, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS PAM TRANSPORT, INC. AND WADE MCCLURE'S
MOTIONS IN LIMINE**

Defendants PAM Transport, Inc. and Wade McClure (collectively the "PAM

defendants"), by and through their undersigned attorneys of record, move this Court *in*

*limine* to prohibit the plaintiff, plaintiff's counsel, and plaintiff's witnesses from offering

into evidence, referring to, or otherwise disclosing to the jury, either directly or

indirectly, any facts or testimony indicating the following:

1.      Liability insurance;

2.      Other accidents, incidents, or lawsuits relating to the PAM defendants;

3.      Financial status of PAM Transport, Inc.;

4.      Settlement negotiations and discussions;

5.      Monetary value of non-economic damages;

1

6.      Any alleged romantic relationship between defendants McClure and McKee;

7.      "Preventability" evaluation of accident relating to a Motor Carrier's Guide;

8.      Missouri Commercial Driver License Manual;

9.      PAM Transport's post-accident reporting and review guidelines;

10.     PAM being a "union free" employer;

11.     Missouri Highway Patrol officer Altermatt's notation of "contributing circumstances;"

12.     Plaintiff should be precluded from offering "lost wage"/support evidence based upon speculative career options of plaintiff's decedent;

13.     Plaintiff should be precluded from offering "lost wage" evidence due to her grief.

14.     Any post-accident discussions about propriety of parking on ramps

15.     Any reference to NTSB Special Investigation Reports on Truck Parking Areas

16.     Any reference to "Safe Stat" data on PAM Transport, Inc.

17.     Expert opinions not timely disclosed or stated in expert witness disclosures;

18.     Opinions not stated to a reasonable degree of certainty;

19.     Opinions of Kevin Johnson that are legal conclusions, speculative, or outside his area of expertise

20.     Plaintiff must be precluded from offering evidence of "losses" purportedly sustained by plaintiff's nephew, Jaylen Dotson.

21.     Testimony from any witness nor use of any exhibits not identified or produced pursuant to Rule 26(a)(1) or this Court's orders

## II.     POINTS AND AUTHORITIES

### 1.     Liability insurance

It is a well-known rule that information regarding insurance agreements is inadmissible.  See FRE 411; *Charter v. Chleborad*, 551 F.2d 246, 248 (8th Cir. (Mo.) 1977).

There are no issues in this case that make the introduction of evidence of PAM Transport, Inc.'s liability insurance coverage or policies relevant.  In fact, the introduction of, or reference to, such information could be highly prejudicial to the PAM defendants.  Therefore, the Court should prohibit the plaintiff or any other party from offering into evidence, referring to, or otherwise alluding to facts indicating that the PAM defendants are insured against acts of negligence.

### 2.     Other accidents, incidents, or lawsuits related to the PAM Defendants

The parties should be precluded from mentioning any accidents, incidents, or lawsuits related to the PAM defendants, other than the incident alleged in the instant cause of action.  Any such evidence is irrelevant and unduly prejudicial and should be excluded. FRE 401, 403.

The law is clear that other acts of negligence or allegations of such acts are generally inadmissible to show the actor is negligent on the occasion in question.  FRE 404(b); *Berry Oswald*, 143 F.3d 1127, 1132-33 (8th Cir. (Ar.) 1998); *Chaney v. Creton*, 658 S.W.2d 891, 893 (Mo. App. 1993); See also *Deveny v. Smith*, 812 S.W.2d 810 (Mo. App. 1991).  Both Eighth Circuit and Missouri law are clear that evidence in any action should be relevant and evidence that throws no light on the controversy before the court

should be excluded because it tends to confuse the issues and operate to prejudice a party before the jury.  See *Berry*, supra; *First Security Bank v. Union Pacific Railroad Co.*, 152 F.3d 877 (8th Cir. 1998); *Switzer v. Switzer*, 373 S.W.2d 930, 939 (Mo. 1964).

Admission of evidence of other occurrences, claims, or lawsuits would prove unfairly prejudicial to the PAM defendants because it would necessarily raise extraneous and irrelevant points, lead to a confusion of issues, and present unfair prejudice disproportionate with any conceivable usefulness.   For example, a PAM Transport representative was questioned about a "wage and hour" lawsuit filed in another state. Such litigation is wholly irrelevant to any issue presented in this "wrongful death" lawsuit, and would obviously present a risk of unfair prejudice to the PAM defendants. Therefore, this Court should exclude any evidence or questioning presented by any party related to prior accidents, incidents, or lawsuits related to the PAM defendants.

### 3.    Financial and/or corporate status of PAM Transport, Inc. and relative financial status of the parties

Any reference to the financial status, corporate structure, and/or net worth of PAM Transport, Inc. must be precluded.  Further, the relative financial status of the parties, as well as any evidence of financial disparity between them, is simply irrelevant and immaterial to any substantive issue in this cause of action and shall be precluded. FRE 401, 402, and 403.  Such evidence is properly excluded at trial.  *See Catipovic v. Turley*, No. C 11-3074-MWB, 2014 WL 6968413, at *15 (N.D. Iowa Apr. 18, 2014) (barring evidence of relative financial status of the parties because such "evidence might invite jurors to decide the claims in this case on the improper basis of the parties' relative wealth, rather than on the basis of proof of the specific claims" and characterizations of a parties financial status are "opinions masquerading as 'reputation' evidence and do not

even reach the dignity of evidence of character or character for truthfulness or untruthfulness, which would be of doubtful admissibility, even if it were offered.")

Similarly, Missouri courts have held that such a plea of relative poverty is immaterial and has no proper place or purpose at trial. *Conrad v. Twin Oaks, Inc.,* 344 S.W. 2d 286, 288 (Mo. App. 1961). "The usual purpose of such a plea is to arouse jury sympathy for a party through the mention of circumstances of poverty and hardship beyond the issues of the case." *Id.* Furthermore, under Missouri law, the admission of such an argument may constitute prejudicial error. *Collins v. Nelson,* 410 S.W.2d 570, 577 (Mo. App. 1965).

### 4.    Settlement negotiations and discussions

The parties have engaged in informal settlement discussions, and may continue such discussions in the future. Any reference to such actions or discussions is inappropriate and improper. FRE 408; *See also Greyhound Lines, Inc. v. Miller*, 402 F.2d 134, 139 (8th Cir.1968); *Scenic Holding, LLC v. New Bd. of Trustees of Tabernacle Missionary Baptist Church, Inc.*, 506 F.3d 656, 668 (8th Cir. 2007). This exclusion is well founded as it has the purpose of encouraging settlements and the admissibility of such discussions would have the effect of chilling parties' efforts to reach compromise. *See Reichenbach v. Smith*, 528 F.2d 1072, 1074 (5th Cir.1976) ("A primary reason for excluding evidence of a compromise is to encourage non-litigious solutions to disputes. Admission of evidence of the settlement could work to discourage plaintiffs and defendants from settling with one or more of several codefendants."); s*ee also Perzinski v. Chevron Chemical Co.*, 503 F.2d 654, 658 (7th Cir.1974).

Such policy conforms with Missouri Law on the subject as well.  *See Rodgers v. Czamanske*, 862 S.W.2d 453, 460 (Mo. App. 1993) (evidence of settlement offers should be kept from jury because of the highly prejudicial effect such evidence may have upon the jury).

Furthermore, because the right to a trial by jury is a fundamental constitutional right under both the 7th Amendment to the Constitution of the United States and Article I, § 22(a) of the Constitution of the State of Missouri, any comment to the jury about the parties' failure to settle would be an impermissible comment upon the defendants' exercise of their constitutional rights and should not be allowed by this Court.

**5.      Monetary value of non-economic damages**

Plaintiff should not be allowed to make any reference or argument regarding the monetary value of non-economic damages.  Missouri law clearly states that no witness should be allowed to opine as to the value of non-economic damages.  *Graeff v. Baptist Temple of Springfield*, 576 S.W. 2d 291, 302 (Mo. Banc 1978).  Such evidence is improper and should be excluded.

Further, none of Plaintiff's witnesses should be allowed to make such a reference. Under Federal Rule of Evidence 702, an expert may only provide testimony so long as it will help the trier of fact. Thus such testimony must be, by its very nature, beyond the common understanding of the jury. Non-economic damages are not beyond the knowledge and experience of common people, and therefore an expert's opinion on such matters should be disallowed. *Daniel v. Coleman Co.*, No. 06-5706KLS, 2007 WL 4246270, at *1 (W.D. Wash. Nov. 28, 2007).

6.     **Any alleged romantic relationship between defendants McClure and McKee**

On multiple occasions, several parties have raised the specter of a romantic relationship between defendant McClure and defendant McKee, which several have surmised existed at the time of the incident at issue.  First, there is absolutely no evidence indicating that such a purported relationship even existed at the time of the events at issue.  Even if there was any such evidence, the fact that such a relationship existed is wholly irrelevant to any issue raised in this litigation, as it has no tendency to make any fact in dispute more or less likely and simply amounts to a waste of the jury and Court's time.  Thus, FRE 401 precludes such evidence or reference.  Further, such a sensitive topic (extra-marital relationships) would be highly inflammatory and grossly prejudicial to the PAM defendants, particularly in light of the complete lack of any probative value with respect to plaintiff's claims.  FRE 403.  Indeed, even passing reference to such "evidence" would create an almost certain bias against the individual PAM defendants.  As such, no party should be allowed to mention, imply, or offer evidence of such a relationship.

7.     **"Preventability" evaluation of accident relating to a Motor Carrier's Guide**

Throughout the course of discovery in this matter, plaintiff's counsel has questioned various defendants about "preventability" evaluations with respect to accidents and certain generalized fact patterns.  These questions appear, based upon counsel's representations, to derive from a resource entitled, "Education and Technical Assistance Program - A Motor Carrier's Guide to Improving Highway Safety" published by the U.S. Department of Transportation.

In the introduction to the publication it is noted by the Department of

Transportation,

> While every effort has been made to assure that the information provided here is complete and accurate; **it is not intended to take the place of published agency regulations**. The document paraphrases the Federal Motor Carrier Safety Regulations published in Title 49 of the U.S. Code of Federal Regulations. **The contents may not be relied upon as a substitute for the most current official text. The regulations issued by the U.S. Department of Transportation and its Operating Administrations are published in the Federal Register and compiled in the U.S. Code of Federal Regulations (CFR).**

See attached Exhibit A, at page i (emphasis added)[1].

"Preventability" determinations are not required by statute or regulation.  In fact,

the publication does not suggest that a preventability determination is somehow required

by statute or regulation.  Instead, the resource to which plaintiff's counsel referred is

nothing more than a discussion tool that a motor carrier may choose to either use or not

use.  They are not "orders from on high [from the federal government or the states]".

Exhibit A, page 126.  Nor do they reflect or purport to reflect statutory or regulatory

mandates or standards of care.

Given the nature of the materials to which plaintiff's counsel has cited, this Court

should preclude any such reference to or evidence from the Program manual because the

publication is irrelevant to any issue in the case and presents a serious risk of confusion

and unfair prejudice to the defendants in this matter.  No witness has testified that such

materials constitute or even pertain to a statutory or regulatory requirement, nor has any

witness testified that such evaluations are required by an applicable standard of care or

that such post-hoc analysis from the Program was utilized in this case.  To the contrary,

---

[1] Select portions of the publication are attached as Exhibit A.  The complete guide can be located at this link:  http://www.fmcsa.dot.gov/safety/carrier-safety/motor-carriers-guide-improving-highway-safety. (Note:  This webpage contains the disclaimer noted above)

the publication itself affirmatively concedes it is no substitute for citation to actual legal authority.  Instead, such questioning attempts to inject rank hearsay (statements from the publication) of a general nature as to topics that will only serve to confuse and obfuscate the real issues for the triers of fact—whether the various defendants were "negligent" under state law.

Furthermore, the term "preventable" in and of itself is one of art that will likely prove confusion to lay jurors, particularly where there is no guidance provided as to what that determination means, how it may or may not be used, and how it fits into an overarching motor carrier safety program.  No witness in this matter will testify as to such issues, and thus, the jury would be left to interpret such terms, in the absence of any meaningful guidance.  Further, plaintiff's counsel has prefaced his questioning by noting that the publication is "put out" by an agency of the federal government, which is likely to place an improper and misleading imprimatur of authority on the materials and any resulting questioning.  Thus, such "evidence" would necessarily run afoul of FRE 403 and would essentially be a confusing and prejudicial waste of the Court and the jury's time.

Finally, the introduction of materials and/or questioning about an available but voluntary post-accident evaluation process would necessarily run afoul of the subsequent remedial measures doctrine.  Such evidence is necessarily inadmissible for the very reason that its probative value is almost always outweighed by the potential prejudice and risk of confusion as to value of such "evidence."  FRE 407 specifically bars such evidence,

> When, after an injury or harm allegedly caused by an event, measures are taken, which if taken previously, would have made the injury or harm less likely to

occur, evidence of the subsequent measures is not admissible to prove negligence [or] culpable conduct. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures.

Fed. R. Evid. 407.

Consequently, this Court should preclude reference to and/or the introduction of any such post-incident "preventability" testimony arising from the Program manual.

**8.      Missouri Commercial Driver License manual**

Throughout the course of discovery in this matter, witnesses have been questioned about issues addressed in the "Missouri Commercial Driver License Manual." The Missouri Commercial Driver's License manual is not a statement of the law in the State of Missouri or Federal regulations.  The use of these hearsay statements that are contained in the Missouri Commercial's License Manual should not be permitted as some kind of substitute of Missouri or Federal law.

Furthermore, the sections of the manual used in depositions (regarding the plaintiffs claims that the parked defendants should have placed triangles and/or used emergency flashers) is irrelevant to the issues in this case, as 49 CFR §392.22 (the regulation cited by the plaintiff in support of her claims) does not address or apply to parking in rest areas and ramps to such rest areas.  More importantly, the language utilized within that manual does NOT track the regulation at issue, so it is confusing and misleading, even if it were potentially applicable and relevant.

Like the "Education and Technical Assistance Program - A Motor Carrier's Guide to Improving Highway Safety" discussed above, no witness has testified that the statements contained within this publication constitute statutory or regulatory requirements, nor has any witness testified that statements constitute the applicable

standard of care.  To the contrary, the publication itself reveals that it affirmatively

concedes it is no substitute for citation to actual legal authority,

> There is a federal requirement that each state have minimum standards for the
> licensing of commercial drivers.

> This manual provides driver license testing information for drivers who wish to
> have a commercial driver license (CDL). This manual does NOT provide
> information on all the federal and state requirements needed before you can drive
> a commercial motor vehicle (CMV). You may have to contact your state driver
> licensing authority for additional information

*See* Exhibit B at page 1-1 (emphasis in original)

Given the nature of the materials to which plaintiff's counsel has cited, this Court

should preclude any such reference to or evidence from the CDL manual because the

publication is irrelevant to any issue in the case and presents a serious risk of confusion

and unfair prejudice to the defendants in this matter.  As mentioned above, no witness has

testified that such materials constitute a statutory or regulatory requirement.  Questioning

from this manual attempts to inject rank hearsay (statements from the publication) of a

general nature as to topics that will only serve to confuse and obfuscate the real issues for

the triers of fact—whether the various defendants were "negligent" under state law.

Further, the source of the document is likely to place an improper and misleading

imprimatur of authority on the materials and any resulting questioning.  Thus, such

"evidence" would necessarily run afoul of FRE 403 and would essentially be a waste of

the Court and the jury's time.

## 9.    PAM Transport's post-accident reporting and review guidelines

During the course of questioning of PAM Transport, Inc.'s representative, counsel

inquired about portions of the PAM Transport "Employee Handbook," which references

certain procedures that PAM Transport recommends that its drivers follow ***after*** a motor

vehicle accident/incident. However, such evidence and/or information is wholly irrelevant to any issue raised by the above-referenced litigation and thus should be excluded. By their very nature these procedures could only be followed after an incident had occurred, by which point any damage would necessarily already have been done. Consequently, in a motor-vehicle accident case such as this, the references are wholly irrelevant and not probative of any issue raised in this matter.  Instead, counsel for Cavanaugh has questioned PAM witnesses about whether the guidelines are to "ensure safety" and whether such guidelines were followed in this case.  Such inquiry is simply not relevant to any issue in the case, and is simply injected to try and impugn the company, as focused on its own interests.  It does not, in any way, bear on any issues raised in this matter, and can only serve to waste time, confuse the jury, and prejudice PAM and its driver.  Accordingly, such evidence must be precluded under FRE 401, 402, and 403.

> **10.    PAM being a "union free" employer**

During the course of questioning of PAM Transport, Inc.'s representative, counsel inquired about portions of the PAM Transport "Employee Handbook," which references the fact that PAM Transport is a "union free" workplace.  However, that fact is wholly irrelevant to any issue raised in this above-referenced litigation.  Moreover, there is a real possibility that such evidence or reference could potentially improperly influence members of the jury—to the extent that such individuals may have biases and/or strong feelings pertaining to organized labor efforts.  Consequently, the Court should prohibit any reference to such facts and preclude the admission of such portions of the "Employee Handbook," pursuant to FRE 401, 402, and 403.

### 11.   Missouri Highway Patrol officer' Altermatt's notation of "contributing circumstances"

After the collision giving rise to this lawsuit, Highway Patrol Office Altermatt prepared a Missouri Form Accident Report regarding the accident.  In the "probable contributing circumstances" of the report, he included the following:



See attached Exhibit C, page 6.

Plaintiff's witnesses, including both Highway Patrol Officer Altermatt and any other witnesses offering testimony regarding the underlying facts of the accident, should be prohibited from testifying as to the "contributing circumstances" of the accident. This would constitute an improper expert opinion as it is an ultimate legal conclusion, and such testimony would invade the province of the jury.

Specifically courts—both state and federal—have held that police officers should not be allowed to testify as to the cause of an accident. *See Khan v. Gutsgell*, 55 D.W. 3d 440, 442-443 (Mo. Ct App. 2001) (holding "courts in Missouri and elsewhere have repeatedly held that an investigating officer who was not an eyewitness may not properly

state his or her opinion as to which of the parties was at fault in causing a traffic accident,"); *Bowie v. Am. Home Assur. Co.*, No. CIV.A. 05-1381-JJB, 2009 WL 960202, at *3 (M.D. La. Apr. 7, 2009)(holding "As a general rule, police officers' lay 'opinions as to the cause of an automobile accident formed by viewing subsequent evidence at the scene' are excluded under Rule 701.").  Indeed, Missouri law has consistently held that in an automobile negligence case, an officer of the law may not state his opinion as to which party to an auto accident was at fault or which actions of the parties contributed to the accident. *Stucker v. Chitwood*, 841 S.W.2d 816, 820 (Mo. App. 1992)(quoting *Lollis v. Superior Sales Co.*, 224 Kan. 251, 580 P.2d 423, 431 (1978)).  The types of opinions by police officers that must be excluded by the trial court are those that go to the officer's own assessment of who was responsible for an accident. See *Id.* at 819–21; *Khan*, 55 S.W.3d at 441–44; *Wills v. Townes Cadillac–Oldsmobile, Inc.*, 490 S.W.2d 257, 262–63 (Mo.1973).  Even with regards to so-called "accident reconstruction experts" they also must not invade the province of the jury, by proffering legal conclusions. "Opinions [of accident reconstructionists] that merely tell the jury what result to reach should be deemed inadmissible under Rules 701, 702 and 403." *Perez-Garcia v. Puerto Rico Ports Auth.*, 873 F. Supp. 2d 435, 441-42 (D.P.R. 2012).

In the instant case, plaintiff should be precluded from referencing, offering evidence of, or alluding to Officer Altermatt's hearsay statements about what he felt at the time were "probable contributing circumstances".  Such evidence invades the province of the jury and is not the proper subject of either lay or expert testimony.  As such, it would constitute unfairly prejudicial evidence in this case.

### 12.    Plaintiff should be precluded from offering evidence of purported lost wages based upon speculative career options of plaintiff's decedent.

This Court should disallow plaintiff from introducing any evidence of lost wages/support based upon a theory of wage loss for a job that decedent Anthony Butler did not have and for which no substantial evidence exists as to his future.  In this case, plaintiff has suggested that she will seek "lost support" from plaintiff's Decedent based upon testimony regarding purported income generated by the now-settled co-defendant Cavanaugh, as an Independent Contractor of CR England in 2011.  Putting aside the accuracy or legitimacy of Mr. Cavanaugh's claims as to his income, there is absolutely no basis on which to conclude that Mr. Butler was going to become an Independent Contractor with CR England or how such an arrangement might have impacted his earnings.  Thus, such evidence and testimony is without foundation, is prejudicial, and should be precluded.

At the time of this incident, plaintiff's decedent was a "trainee" of CR England, and was relatively early on in that process—having only received his commercial operator's license within 60 days of the accident at issue.  There is absolutely no evidentiary basis to conclude that decedent Butler would have completed and passed the training program, much less become an independent owner/operator business affiliated with CR England following his training period (as opposed to becoming a full time employee of CR England).  Plaintiff has neither admissible fact-witness testimony nor any purported expert testimony to address why such calculations, based upon independent contractor earnings surmised by defendant Cavanaugh, are somehow reflective of what Mr. Butler, as a mere trainee, might otherwise earn at some point in the future.  Accordingly, such a claim cannot and should not be presented to the jury.  Any

such "lost support" claims must be based only upon admissible evidence with a proper foundation; there is no reasonably reliable evidence to support an assumption in this case that Mr. Butler would have fully completed the training program and made an independent decision to become an independent business owner/commercial driver. Any suggestion that the decedent would have risen to this station within the company is merely speculation. "Under Missouri law, a plaintiff in a personal-injury case may recover for a loss of future earnings based on evidence that is reasonably certain and affords a reasonable basis for estimating the losses." *Torbit v. Ryder Sys., Inc.*, 416 F.3d 898, 905 (8th Cir. 2005). Plaintiff can provide no evidence, much less evidence which is *reasonably certain*, that decedent would have become an independent contractor. Thus, the plaintiff should be precluded from referencing or offering evidence of "lost wages/support" based upon an income estimate of other dissimilar individuals, such as Mr. Cavanaugh.

### 13.     Plaintiff should be precluded from offering "lost wage" evidence due to her grief.

It is anticipated that Ms. Butler may seek to recover for *her own* lost wages as she has testified that she was unable to work for a period of time after the death of Anthony Butler because of her feelings of grief and sadness.  Such damages are not recoverable under the Missouri Wrongful Death Act, and any evidence of or reference to such time away from work should be excluded.

Mo. Rev. St. 537.090 sets forth the damages that are properly recoverable under Missouri Law in a wrongful death claim.  The statute provides, in pertinent part,

> In every action brought under section 537.080, the trier of the facts may give to
> the party or parties entitled thereto such damages as the trier of the facts may
> deem fair and just for the death and loss thus occasioned, having regard to the

16

pecuniary losses suffered by reason of the death, funeral expenses, and the reasonable value of the services, consortium, companionship, comfort, instruction, guidance, counsel, training, and support of which those on whose behalf suit may be brought have been deprived by reason of such death and without limiting such damages to those which would be sustained prior to attaining the age of majority by the deceased or by the person suffering any such loss. In addition, the trier of the facts may award such damages as the deceased may have suffered between the time of injury and the time of death and for the recovery of which the deceased might have maintained an action had death not ensued. The mitigating or aggravating circumstances attending the death may be considered by the trier of the facts, ***but damages for grief and bereavement by reason of the death shall not be recoverable***. . .

*See also Parr v. Parr*, 16 S.W.3d 332, 337 (Mo. 2000) (recognizing that damages for grief and bereavement "are not compensable under section 537.090."). The statute is clear – **no damages** relating to "grief and bereavement" **by reason of the death** are compensable under the statute.

To the extent plaintiff seeks to offer evidence that she was unable to work as a consequence of her grief and bereavement, such evidence would relate to an expressly prohibited category of damages, and such evidence should not be permitted. In this case, Ms. Butler has testified as follows, with respect to these prohibited damages asserted:

> Q.  Okay.  Ma'am, are you personally claiming any lost wages as a result of the death of Mr. Butler?
> A.  Yes.
> Q.  And what lost wages are you claiming?
> A.  ***I couldn't work for approximately probably a three-month period due to his death.***  I didn't receive any benefits or check or anything during the time that I was off.
> MR. HUGHES:  Did you take family medical leave or something?
> THE WITNESS:  Yes.
> Q.  (By Mr. Brackman)  That was going to be my next question.  So you did take family medical leave?
> A.  Yes.
> Q.  And the three months you took off, I assume that was immediately after his death for an extended three-month period or was it broken up into parts?
> A.  It was three months straight.  But as I went back, I -- ***I couldn't handle it.  I left a lot, you know. I had to leave a lot because of my***

*pressure, my blood pressure was going up.  I couldn't sleep.  I mean my work function was off balance.*  So it was probably a little longer than that, than the three months.  But that's how long I stayed off for a long period of time was three months.

   Q.  So after that three months then, you felt you were capable of going back to work, but then you would take periods of time off?  Is that what you're saying?  And I don't want to misstate your testimony.

   A.  Repeat that.

   Q.  Sure.  You took an extended period of three months off.  And then you felt you were able to go back to work.  But when you went back to work, there were periods of time you took off again; is that what you're saying?

   A.  I didn't feel like I could go back to work, but I had to go.

   Q.  After this three-month time period, was there any other extended period of time you took off of work?

   A.  Not extended.  Days.  I might go two days and be off a day, like that.

   .  .  .

   Q.  And do you recall what Ms. Jones told you about your job security after Mr. Butler's death?

   A.  Yes.  She explained to me we go by a point system where you can -- you accumulate points.  And once he passed away, they let me be off without pay for three months.  Then after those three months, I have to return to work.  I returned to work.  *I still wasn't doing good, you know, with coping.  So I would miss a lot of time.  When I was missing time, I would accumulate points.  You can only get nine points.  And I would get -- I knew that I had to be at work.  So the points was like they would fall off every quarter.  And every quarter is like three months.  But I would be so sad and can't function.*  So once that point fall off, I gained it right back.  So she was telling me I have to watch my points or I'm going to be fired because I can't go on keep on missing the points like that.  So that's how she explained it.  (Deposition of Veronica Butler at  26:25 – 28:14 and 38:17 – 39:8, attached as Exhibit D.)

In essence, plaintiff seeks to recover damages because she was "sad" and couldn't properly "function" due to her understandable grief.  However, this is undoubtedly one type of damages relating to "grief and bereavement" that are expressly prohibited by Missouri law.  Indeed, defendants' research has revealed no reported Missouri appellate decisions that authorize or permit such a measure of damages in a wrongful death case.

Absent such authority, and in light of the plain language of the applicable statute, such evidence must be precluded.  Accordingly, any such claim and/or evidence relating to purported damages for plaintiff's "lost income" is improper and should be excluded by this Court.

    **14.**    **Any post-accident discussions about propriety of parking on ramps**

During the course of questioning of Andrew Christiansen (Associate Vice President of Safety for PAM Transport), counsel inquired regarding instruction provided to PAM drivers **_after_** the accident giving rise to this litigation regarding parking within rest areas.  In particular, plaintiff's counsel has inquired as to whether anyone at PAM Transport, Inc. has undertaken to prevent or discourage its drivers from parking vehicles on ramps within truck parking or rest areas.  However, such evidence and/or information is wholly irrelevant to any issue raised in this litigation and thus should be excluded.  It does not, in any way, bear on any issues raised in this matter, and can only serve to waste time, confuse the jury, and prejudice PAM and its driver.  Accordingly, such evidence must be precluded under FRE 401, 402, and 403.

Furthermore, and along similar lines, the introduction of materials and/or questioning about an available but voluntary post-accident evaluation process ("preventability"—see motion 7, *supra*), as it relates to this specific accident or to similar accidents generally, would necessarily run afoul of the rule prohibiting evidence relating to subsequent remedial measures. FRE 407.  Such evidence is necessarily inadmissible for the very reason that its probative value is almost always outweighed by the potential prejudice and risk of confusion as to value of such "evidence."  FRE 407 specifically bars such evidence,

> When, after an injury or harm allegedly caused by an event, measures are taken, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence [or] culpable conduct. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures.

Fed. R. Evid. 407.

In light of the foregoing, this Court must prohibit plaintiff from questioning witnesses or seeking to introduce evidence relating to these post-accident issues.  These inquiries are simply not relevant to the claims at issue and create a significant risk of jury confusion—all while wasting precious time and judicial resources on matters not at issue in this litigation.

### 15.    Any reference to NTSB Special Investigation Reports on Truck Parking Areas

Plaintiff and Plaintiff's witnesses should be prohibited from making any reference to a 2000 NTSB "Highway Special Investigation Report" on "Truck Parking Areas." This document should be excluded as irrelevant and unduly prejudicial hearsay, which can only create a significant risk jury confusion. Throughout the depositions taken in this matter, plaintiff's counsel has extensively questioned the defendants at length about portions of this publication.  However, such a publication is simply rank hearsay, and the contents to which plaintiff has repeatedly pointed are irrelevant to this matter and create an enormous risk of unfair prejudice to the defendants.

First and foremost, the document to which counsel has referred is the textbook definition of hearsay, and defendants respectfully submit that no viable exception to the normal hearsay prohibition exists to admit any of the document, whether in whole or in part.

Additionally, the study uses the term "illegal" parking on several occasions without any definition of what constitutes "illegal" parking or identifying Missouri law on proper parking and locations for proper parking.  Such vague references contained in the study without any context (and coupled with the hearsay aspect) of the statements, will cause jury confusion and is unduly prejudicial.

Although the purported publication is rife with inadmissible out-of-court statements, the discussion of a purported accident in Tennessee is particularly troublesome and must be excluded by the Court.  First, the details of that particular incident, which purportedly occurred over a decade prior to the accident at issue in this case in an entirely different state with different laws, is factually distinct from the situation at issue in this litigation; thus, any reference thereto can only serve to confuse and mislead a jury. Consequently, it should be excluded under Federal Rules of Evidence 401 and 403.  Further, in detailing a Tennessee accident, this document appears to refer to Tennessee law, specifically the illegalities of certain parking arrangements, at least based upon the blanket generalizations utilized within the purported publication. This, of course, has no legal effect in a Missouri case, under Missouri's laws.

Any reference to this document would hold a substantial likelihood of confusing and misleading a jury, while the factual and legal distinctions between the accident which it details and the accident at issue in the current litigation are sufficient enough to eliminate any potential probative value which this document may have had.

**16.    Any reference to "Safe Stat" data on PAM Transport, Inc.**

Defense counsel anticipates that plaintiff may seek to elicit testimony from PAM Transport witnesses (or other witnesses) regarding available "Safe Stat" data regarding

the operational history of PAM Transport.  "Safe Stat" is part of a system maintained by the Department of Transportation regarding interstate motor carriers, such as the defendants.  It includes, amongst other items, a cursory/summary statement and/or description regarding accidents and/or incidents reported by the various carriers.  In this case, plaintiff's counsel has specifically inquired of PAM witnesses as to the details of certain posted information about other accidents and/or incidents.  However, such evidence is wholly irrelevant to any issue raised in this litigation and thus should be excluded.  FRE 401, 402.  Further, such evidence of "prior bad acts" would be potentially unfairly prejudicial and would be a complete waste of time, given that it bears no relationship to the accident at issue in this case.  FRE 403.  Simply put, summary information maintained by the DOT regarding other incidents or accidents is simply inadmissible, and all such evidence, or references thereto, must be excluded by this Court.

This Court should preclude any references to "Safe Stat" data *generally* because all such information is simply irrelevant and unfairly prejudicial to PAM Transport, in light of the claims currently at issue.  However, this is particularly necessary and appropriate, as it relates to other instances of purported conduct (i.e. other accidents and/or incidents) that are wholly unrelated to the subject accident.  As this Court is undoubtedly aware, "character evidence," including prior specific instances of conduct, is not admissible to prove action in conformity therewith on a particular occasion.  See FRE 404(b).  That is exactly what such evidence from "Safe Stat" would reflect, and is nothing more than a transparent attempt to prejudice PAM Transport, based upon other incidents that have no relationship to plaintiff's claims in this particular matter.

22

Moreover, any such accidents and/or incidents addressed in the "Safe Stat" data will involve situations that are factually distinct from the accident at issue--with state and local laws that will differ from those applicable to this lawsuit.  As such, it does not, in any way, bear on any issues raised in this matter, and can only serve to waste time as it could lead to countless "trials within the trial" which can only serve to confuse the jury, and prejudice PAM and its driver.  Accordingly, such evidence must be precluded under FRE 401, 402, 403 and 404.

**17.    Expert opinions not timely disclosed or identified in expert witness disclosures**

In addition to the required disclosures under Rule 26, the PAM defendants requested, through interrogatories, the names of expert witnesses, as well as the subject matter on which the expert witnesses are expected to testify.  Plaintiff failed to disclose ***any expert witnesses***, whether retained or non-retained, by the August 15, 2014 deadline to do so set by this Court in its Case Management Order (ECF No. 95).  On October 10, 2014, nearly two months after the deadline to disclose experts and without court-leave to designate experts out of time, plaintiff served her disclosure stating that she had retained no experts but intended to "cross designate" experts identified by the other parties to this matter and intended to use certain "non-retained experts."  *See* Exhibit A.  In particular, she belatedly identified Kevin Johnson, an accident reconstructionist that was retained by a now-settled co-defendant, Kevin Cavanaugh.  *Id.*

The PAM Defendants are entitled to rely on the Court's Scheduling Order as well as plaintiff's timely submitted mandatory disclosures, answers to interrogatories, and expert disclosures in determining who the defendants should depose and who they should select as its own experts.  *Wilkerson v. Prelutsky,* 943 S.W.2d 643, 649 (Mo. banc 1997).

Here, plaintiff did not timely or properly disclose **any** expert witnesses by the deadline established by the Court in regards to "expert" testimony.  Therefore, plaintiff should not be permitted to offer the testimony of any witness that qualifies as "expert" in nature. See FRCP 16, 26, and 37; *Trost v. Trek Bicycle Co.*, 162 F.3d 1004, 1008-09 (8th Cir. 1998)(finding no error in precluding untimely designated expert); *Sylla-Sawdon v. Uniroyal Goodrich Tire Co.*, 47 F.3d 277, 282-84 (8th Cir. (Mo.) 1995)(same).  While plaintiff belatedly attempted to "cross designate" certain fact witnesses and a retained expert by one of the parties that she sued (namely Kevin Cavanaugh's retained expert reconstructionist) and with whom she has now settled, this Court should not allow plaintiff to belatedly "bootstrap" an opposing party's retained experts and make that witness her own for purposes of establishing her *prima facie* case.  Further, plaintiff should not be permitted to use any other witnesses or testimony not timely disclosed to provide "expert" testimony as part of her *prima facie* case.

### 18.  Opinions not stated to a reasonable degree of certainty

In the unlikely event that the Court decides to allow plaintiff to utilize testimony of Kevin Johnson (whether by deposition or live testimony), any such opinions expressed by the Mr. Johnson, the sole retained expert previously identified by now settled defendant Kevin Cavanaugh in this matter, should be limited only to those opinions that the expert holds to a reasonable degree of scientific certainty. *See Grant v. Farnsworth*, 869 F.2d 1149, 1152 (8th Cir. 1989); *See also Sorensen v. Shaklee Corp.*, No. CIV. 1-91-CV-70007, 1993 WL 735819, at *5 (S.D. Iowa Sept. 28, 1993) *aff'd sub nom. Sorensen By & Through Dunbar v. Shaklee Corp.*, 31 F.3d 638 (8th Cir.1994) Opinions that are not

reasonably certain are neither relevant nor probative, and they amount to nothing more than speculation.  See *Grant,* supra.

During the deposition of Mr. Johnson, he testified that there were two possible scenarios as to what caused Mr. Cavanaugh to leave the paved surface and travel through the grass before striking the vehicles parked within the truck parking area.  First, he speculates that Mr. Cavanaugh fell asleep and travelled off the paved surface.  See Exhibit E at pages 101:9-25, 107:21 – 108:12, and 126:14 – 127:5.  Alternatively, he speculates that Mr. Cavanaugh may have been "confused" by the configuration of the vehicles parked within the truck parking area.  *Id.*  He is not able to state that either is "likely" to have occurred to a reasonable degree of certainty.  *Id.*  That testimony and analysis are adequately briefed in the PAM defendants' prior Motion to Exclude and Memorandum in Support, which are incorporated herein by reference.  However, suffice to say that such speculative testimony is devoid of any evidentiary value and constitutes rank conjecture—as opposed to an "expert" opinion that is based upon a proper scientific foundation.  In short, it is nothing more than his inferential guess work, which is simply not helpful to the triers of fact and should not be permitted.

### 19.   Opinions of Kevin Johnson that are legal conclusions, speculative, or outside his area of expertise

The PAM Defendants have filed a separate *Daubert* Motion on this issue and hereby incorporate the arguments set forth in that briefing (ECF Nos. 161, 162, 163, and 185) as though fully set forth herein.

**20.    Plaintiff must be precluded from offering evidence of "losses" purportedly sustained by plaintiff's nephew, Jaylen Dotson.**

Defendants anticipate that plaintiff will attempt to offer significant testimony and argument regarding purported "losses" suffered by a minor named Jaylen Dotson, who lived with plaintiff and plaintiff's decedent.  Plaintiff had legal custody over Jaylen Dotson, who is plaintiff's biological nephew.  However, Mr. Dotson has never been adopted by plaintiff and, more importantly, has never been adopted by plaintiff's decedent at any time.  Thus, he is not one that falls within the class of beneficiaries entitled to recover under the Missouri Wrongful Death statute, Mo. Rev. Stat. §537.080.

Under the relevant Missouri statute, ***only*** the following are individuals entitled to participate in a recovery:

> (1) ***By the spouse or children*** or the surviving lineal descendants of any deceased children, ***natural or adopted, legitimate or illegitimate, or by the father or mother of the deceased, natural or adoptive***;
>
> (2) If there be no persons in class (1) entitled to bring the action, then by the brother or sister of the deceased, or their descendants, who can establish his or her right to those damages set out in section 537.090 because of the death;

Thus, by the plain terms of the provision, only natural or adopted children are entitled to participate in recovery and have compensable damages.  Section 537.090, which then discusses available permissible damages, further specifies that the jury may only award such losses as are suffered by those entitled to take under the provision.  Thus, only those losses sustained by either the wife (plaintiff) or any children (whether natural or adopted) are properly recoverable and before the Court.

Given the statutory construct, this Court cannot and should not allow plaintiff to introduce evidence relating to purported losses of support for Jaylen Dotson, who is simply not within the class of beneficiaries entitled to recover under the Missouri Act.

Any purported support, guidance, counsel, companionship, etc. that may have existed vis-à-vis plaintiff's decedent and Jaylen Dotson is outside of the statutory damages and is simply irrelevant to the issue of ***plaintiff's*** losses, which are the subject of this lawsuit. Thus, any such evidence is both irrelevant and should be precluded, in accordance with FRE 401 and 402.

It is further inadmissible because such evidence presents a real risk of unfair prejudice to the defendants, in that the jury would be provided with information that could confuse the jury by leaving the jurors with an impression that they either can or should consider such evidence in awarding damages, which is patently improper and inappropriate. Thus, FRE 403 further militates against the admission of such evidence.

### 21.    Testimony from any witness nor use of any exhibits not identified or produced pursuant to Rule 26(a)(1) or this Court's orders

Under Rule 26, plaintiff was under a duty to disclose witnesses, "likely to have discoverable information—along with the subjects of that information" and to provide a "a copy—or a description by category and location—of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment" as part of its mandated disclosures. Further, the defendants have each propounded written discovery that requires disclosure of both witnesses and documents that may be used at the time of trial.

However, many witnesses and documents that plaintiff has indicated she wishes to use at trial were identified by the plaintiff, for the first time, as part of her pretrial witness and exhibit lists on September 15, 2015. (ECF No. 225). Even then, plaintiff

lists broad categories of potential witnesses[2].  Furthermore, many of the documents identified by the plaintiff in her exhibit list were never produced in discovery nor were they described in Rule 26 disclosures.   These too are described with such generalities that the defendants are left to guess as to what exhibits plaintiff refers.[3]

Not only does this practice by the plaintiff violate Rule 26 and the general rules of discovery, including Rule 37, the manner in which plaintiff has identified its exhibits for use at trial runs afoul of this Court's order.  Specifically, this Court issued its order that all exhibits to be used by the parties were to be pre-marked and provided to all counsel with the September 15, 2015 exhibit lists. As of the filing of this motion (six days after the pre-marked exhibits were to be provided to opposing counsel), the plaintiff's exhibits have still not been provided.

It has been recognized in this Circuit that this Court is afforded great discretion in excluding witnesses and evidence that has not been disclosed and/or produced in discovery.  See *Certain Underwriters at Lloyd's v. SSDD*, *LLC,* 301 F.R.D. 391 (U.S.D.C., E.D. Missouri, Eastern Division, July 10, 2014),

> "'The power of the trial court to exclude exhibits and witnesses not disclosed in compliance with its discovery and pretrial orders is essential to the judge's control over the case.'" *Sellers v. Mineta*, 350 F.3d 706, 711 (8th Cir.2003) (internal quotation marks and quoted case omitted). Federal Rules 26(a) and 37(c) "permit a court to exclude untimely evidence unless the failure to disclose was either harmless or substantially justified." *Trost v. Trek Bicycle Corp*., 162 F.3d 1004, 1008 (8th Cir.1998). Delays in disclosure are not "substantially justified" when they reasonably could have been avoided. *See, e.g., Marmo v. Tyson Fresh Meats,*

---

[2] For example, plaintiff lists "Phelps County Regional Medical Center dated 5/21/11," "Capital Region Medical Center dated 5/21/11" and "Air Evac Life Team dated 5/21/11" as witnesses at trial – the exact identity of who from such locations might testify at trial is not noted by the plaintiff in the pretrial submissions.  (ECF No. 225)

[3] For example, plaintiff lists "U.S. Department of Transportation documents concerning safe tractor-trailer parking," "Documents from the Missouri Department of Transportation concerning parking of tractor-trailers in Missouri rest areas," and a generic listing of "photos of the scene of the incident and photographs of Anthony and Jessica Butler"  (ECF No. 225)

*Inc.*, 457 F.3d 748, 759–60 (8th Cir.2006) (identification of witness after deadline has passed is not allowed when the party had "ample opportunity to develop" the issue and when the party "should have sought [to supplement]" pursuant to Fed.R.Civ.P. 26(e)); *cf. Davis v. U.S. Bancorp*, 383 F.3d 761, 765 (8th Cir.2004) (delay was substantially justified where the party adding a witness was unaware of the witness until immediately prior to trial). The Eighth Circuit has identified as "harmful" those failures to disclose that unduly prejudice the opposing party. *See, e.g., Trost*, 162 F.3d at 1008–09 (opposing party would be harmed by the delayed production of information because it had little time to prepare a rebuttal for trial).

*Id*. at 395; see also *Topalian v. Hartford Life Ins. Co*., 945 F.Supp.2d 294

(E.D.N.Y.2013) (exclusion of affidavit after the close of discovery was proper); see also

*Ross v. Corporation of Mercer University*, 506 F.Supp.2d 1325, *reconsideration denied*

2007 WL 1521605 (M.D.Ga.2007) (plaintiff barred from using deposition testimony of

witnesses from similar litigation not disclosed in discovery).

Trial in this matter is set to begin in 14 days.  Allowing plaintiff to call witnesses

at trial who were never identified in Rule 26 disclosures and/or to use exhibits that were

likewise not identified nor produced in discovery – and which have still not been

produced at this time – would prejudice the defendants as they have preparing for trial

under the impression that the witnesses having relevant information have been previously

been identified and that the exhibits potentially to be used at trial have been identified

and produced.

ADDITIONALLY, the PAM defendants hereby incorporate any and all motions

in limine filed by defendants USA Truck, Inc., Troy Coffelt, Furex, Inc. and/or Ivan

Chepynets as though fully set forth herein as a motion in limine brought by the PAM

defendants.

WHEREFORE, for the foregoing reasons, the PAM defendants respectfully request that the Court grant their Motions *in Limine,* as set forth above, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Richard M. Acosta
K. Christopher Jayaram        MO #50771, PHV
Richard M. Acosta             MO #58381
Horn Aylward & Bandy LLC
2600 Grand Boulevard, Ste. 1100
Kansas City, Missouri 64108
cjayaram@hab-law.com
racosta@hab-law.com
(816) 421-0700
(816) 421-0899, FAX

**Attorneys for Defendants PAM Transport, Inc. and Wade McClure**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of September, 2015, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

David G. Hughes
Richard L. Hughes
Mogab & Hughes Attorneys, P.C.
701 Market St. Suite 1510
St. Louis, MO 63101
(314) 241-4475
davidhughes@mogabandhughes.com
richardhughes@mogabandhughes.com

**Attorney for Plaintiff**

Bradley C. Nielsen
Christopher Brackman
Franke Schultz & Mullen, P.C.
8900 Ward Parkway
Kansas City, MO 64114
(816) 421-7100
bnielsen@fsmlawfirm.com
cbrackman@fsmlawfirm.com

**Attorneys for Defendants**
**Furex, Inc. and Ivan M. Chepynets**

Joseph Swift
Kurt Schmid
Brown & James
800 Market Street, Suite 1100
St. Louis, MO 63101
(314) 421-3128
jswift@bjpc.com
kschmid@bjpc.com

**Attorneys for Defendants**
**USA Truck, Inc. and Troy Coffelt**

/s/ Richard M. Acosta
**Attorney**

31